# PD–1408–15

To The Court Of Criminal Appeals Of Texas

No. 01-14-00868-CR

**Ex Parte Stuart Oland Wheeler**

---

Petitioner / Appellant
Stuart Oland Wheeler's
Petition for Discretionary Review

---

On Petition for Discretionary Review from the First Court of Appeals; Cause Number 01-14-00868-CR, affirming the denial of habeas corpus in Cause Number 2014V-0074 from the 155th Criminal District Court of Austin County, Texas.

Mark W. Bennett
TBN 00792970
Bennett & Bennett
735 Oxford Street
Houston, Texas 77007
Tel. 713.224.1747
email MB@IVI3.com

Counsel for Appellant

29 October 2015

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

## Table of Contents

Table of Contents.................................................................................................ii

Table of Authorities ..........................................................................................iv

Statement Regarding Oral Argument.............................................................vi

Names of All Parties........................................................................................vii

Statement of the Case .......................................................................................1

Statement of Procedural History.....................................................................2

Grounds for Review ..........................................................................................2

    First Ground for Review .............................................................................2

    Second Ground for Review ..........................................................................2

    Third Ground for Review.............................................................................2

Reason for Review..............................................................................................3

Facts....................................................................................................................3

Argument and Authorities...............................................................................4

    Summary of the Argument..........................................................................4

    First Ground of Review: The First Court of Appeals erred when it presumed Section 33.021 to be valid. ................................................................5

        The Text of the Statute ...........................................................................6

        Section 33.021 is a content-based restriction on speech. ..............................8

Because Section 33.021 is a content-based restriction on speech, it is presumptively invalid. ........................................................................................ 9

The First Court's Rationale ............................................................................ 10

Conclusion ........................................................................................................ 14

Second Ground of Review: The First Court of Appeals erred when it held that Section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is not void for overbreadth. .......................................................... 15

Other presumptions are also reversed. ......................................................... 15

Does Section 33.021 forbid only unprotected speech? ............................... 17

Section 33.021 will fail strict scrutiny. ......................................................... 21

Conclusion ........................................................................................................ 29

Third Ground of Review: The First Court of Appeals erred when it held that Section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is not void for vagueness. ......................................................... 29

Conclusion ........................................................................................................ 31

Prayer ...................................................................................................................... 31

Certificate of Service ............................................................................................. 33

Word Count ............................................................................................................. 33

Appendix .................................................................................................................. 34

## Cases

*Arganbright v. State*, 328 P.3d 1212 (Okla. Crim. App. 2014) .......................... 12

*Ashcroft v. ACLU*, 542 U.S. 656 (2004) ................................................ 16

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ...................................................20

*Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) ................................................26

*Duncantell v. State* ......................................................30

*Duncantell v. State*, 230 S.W.3d 835 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ......................................... 16

*Ely v. State*, 582 S.W.2d 416 (Tex. Crim. App. 1979) ...................................... 17

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). ..............................passim

*Ex parte Thompson*, 414 S.W.3d 872 (Tex. App.—San Antonio 2013) ............. 10

*Ex Parte Thompson*, 442 S.W.3d 347 (Tex. Crim. App. 2014) ................. 8, 11, 21

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) ..............................29

*Karwoski v. State*, 867 So. 2d 486 (Fla. Dist. Ct. App. 2004)........................... 12

*LaRose v. State*, 820 N.E.2d 727 (Ind. Ct. App. 2005) ................................... 12

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ...................................29

*Maloney v. State*, 294 S.W.3d 613 (Tex. App. — Houston [1st Dist. 2009, pet. ref'd.) ..............................................................................15, 25, 28

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984) ..............................................................................27

*Police Dept. of Chicago v. Mosley*, 408 U. S. 92 (1972)........................................8

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................................ 10

*Reed v. Town of Gilbert*, 576 U.S. ____, 135 S.Ct. 2218 (2015) ...........................8

*Spence v. Washington*, 418 U.S. 405 (1974) .................................................... 11

*State v. Rung,* 774 N.W.2d 621 (Neb. 2009) .................................................... 12

*Tinker v. Des Moines Community School District,* 393 U.S. 503 (1969) ............. 11

*United States v. Hornaday*, 392 F.3d 1306 (11th Cir. 2004)............................. 12

*United States v. Stevens*, 559 U.S. 460 (2010) .................................................. 17

*United States v. Williams*, 553 U.S. 285 (2008).................................................20

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .......................................... 13

*West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) ......... 11

Statutes

Tex. Penal Code § 33.021 (2014).............................................................passim

Tex. Penal Code § 33.021 (2015) ................................................................24

Tex. Penal Code § 33.021(d)(2)....................................................................6

Other Authorities

http://www.amazon.com/s/?url=search-alias%3Dstripbooks&field-
    keywords=age+play+erotica .................................................................25

http://www.legis.state.tx.us/tlodocs/84R/analysis/html/SB00344I.htm .....24

*The Prevalence and Scope of Ageplay* ....................................................... 3, 25, 26

Constitutional Provisions

U. S. Const. amend. 1................................................................................8

## Statement Regarding Oral Argument

Applicant believes that oral argument will be helpful,

and requests oral argument.

## Names of All Parties

| | |
|---|---|
| Mr. Stuart Oland Wheeler | Appellant |
| Mark W. Bennett<br>TBN 00792970<br>Bennett & Bennett<br>917 Franklin Street<br>Fourth Floor<br>Houston, Texas 77002<br><br>Mr. Phil Baker<br>P.O. Box 628<br>La Grange, Texas 78945<br>Tel. 979.968.3783 | Trial and Appellate Counsel<br>for Appellant |
| Ms. Brandy Robinson<br>Asst. Criminal District Attorney<br>One East Main<br>Bellville, Texas 77418<br>(979) 865-5933 | Trial and Appellate Counsel for<br>Appellee |
| Hon. Jeff Steinhauser | Trial Judge, 155th District Court,<br>Austin County, Texas |

## To The Court Of Criminal Appeals Of Texas

### No. 01-14-00868-CR

---

### Ex Parte Stuart Oland Wheeler

---

### Petition for Discretionary Review

---

ON PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS; CAUSE NUMBER 01-11-20-CR, AFFIRMING THE DENIAL OF HABEAS CORPUS IN CAUSE NUMBER 1276551 FROM THE 248TH CRIMINAL DISTRICT COURT OF HARRIS COUNTY, TEXAS.

---

## To The Honorable Court Of Criminal Appeals:

Appellant Stuart Oland Wheeler, by and through his counsel on appeal, Bennett & Bennett, petitions for discretionary review.

❧

## Statement of the Case

The State charged Mr. Wheeler on February 26, 2014, by indictment with the second-degree felony of online solicitation of a minor.[1] Before trial, on June 13, 2014, Mr. Wheeler filed a writ of habeas corpus alleging that Texas Penal Code Section 33.021, the Online Solicitation of a Minor statute, is

---

[1] Clerk's Record 14.

1

unconstitutional because it is overbroad and vague.[2] The trial court denied relief on October 23, 2014.[3] Mr. Wheeler appealed.

❧

### Statement of Procedural History

The First Court of Appeals handed down its opinion on September 29, 2015, affirming the trial court's denial of habeas relief.[4] No motion for rehearing was filed.

❧

### Grounds for Review

Mr. Wheeler presents three grounds for review.

#### First Ground for Review

The First Court of Appeals erred when it mistakenly applied the usual standard of review, including the presumption of the statute's validity, instead of the presumption-of-*invalidity* standard of review for First Amendment, content-based statutes.

#### Second Ground for Review

The First Court of Appeals erred when it held that Section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is not void for overbreadth.

#### Third Ground for Review

The First Court of Appeals erred when it held that Section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is not void for vagueness.

❧

---

[2] Clerk's Record 3–29

[3] Clerk's Record 57.

[4] *Ex Parte Wheeler*, No. 01-14-00868-CR (Tex. App.—Houston [1st Dist.], delivered September 29, 2015).

2

## Reason for Review

The First Court of Appeals has decided an important question of federal law in a way that conflicts with the applicable decisions of this Court and the Supreme Court of the United States. Tex. R. App. Proc. 66.3(c).

❧

## Facts

Mr. Wheeler is charged by indictment with:

> with the intent that K. McBee, a minor, would engage in sexual contact with the defendant, knowingly solicit[ing] over the Internet the said K. McBee to meet the defendant.

This is an accusation of Online Solicitation of a Minor under Section 33.021 of the Texas Penal Code.[5]

In this case, unlike in other cases that have come to this Court on PDR challenging the constitutionality of Section 33.021(c) under the First Amendment, there is evidence in the record of the real and substantial unconstitutional overreach of the statute.[6]

❧

---

[5] Beyond this, the facts of Mr. Wheeler's case are not a part of the record, as this is an as-written challenge to the statute. The First Court noted in its opinion that "Wheeler himself does not assert that he was engaging in innocent ageplay when he made the online solicitation for which he was indicted." Opinion below at 9, fn. 1. This is as it should be—that assertion would make this an as-applied challenge to the statute, not properly made in this context.

[6] See *The Prevalence and Scope of Ageplay*, Clerk's Record at 15–29. In brief, ageplay— sexual roleplay by adults pretending to be children—is "a substantial and longstanding tradition"; "The ageplay community and its practitioners are numerous, diverse, and multifaceted." Section 33.021 forbids ageplay online.

## Argument and Authorities

### Summary of the Argument

What remains of Section 33.021 of the Texas Penal Code after *Ex Parte Lo*[7] forbids a substantial amount of speech that is protected under the First Amendment: speech that either is not soliciting or is directed at an adult whom the speaker does not believe to be a child.

The modern approach to First Amendment challenges to speech-restricting penal statutes[8] is a three-step inquiry:

1. *Does the statute restrict speech (including expressive conduct) based on its content, including its subject matter?* If the answer is "yes," then the statute is presumed to be unconstitutional, and the court must ask…

2. *Does the restricted speech fall entirely into a category of unprotected speech?* If the statute forbids *only* unprotected speech, the First Amendment is satisfied. If, however, the statute captures protected speech along with unprotected speech, then…

3. *Does the statute satisfy strict scrutiny?* That is, is it necessary and narrowly written to satisfy a compelling state interest?

In the case of what remains of Section 33.021, the analysis should have shaken out as follows:

1. Section 33.021 restricts speech based on its content, including its subject matter and its intent. Therefore it is presumed to be unconstitutional.

---

[7] *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013).

[8] *See, generally, United States v. Alvarez*, ___ U.S. ___, 132 S.Ct. 2537 (2012) (applying this approach to the Stolen Valor Act).

4

2.   Section 33.021 captures both protected speech (solicitation with the intent that a crime—sex with a minor—be committed) and unprotected speech (fantasy speech; solicitation of people believed to be adults; and other solicitant speech with no intent that a crime be committed).

3.   Section 33.021 does not satisfy strict scrutiny because it is not narrowly written.

The First Court of appeals went off-track in the first step: it presumed this content-based restriction on speech to be constitutional.

Having gone off-track, the First Court of Appeals applied the wrong analysis and arrived at the wrong result. This Court should grant discretionary review, order briefing, hear argument, and reverse with an order that the indictment be dismissed.

❧

## First Ground of Review: The First Court of Appeals erred when it presumed Section 33.021 to be valid.

In *Ex Parte Lo* this Court reversed the First Court of Appeals because "the court of appeals mistakenly applied the usual standard of review, including the presumption of the statute's validity, instead of the presumption-of-*invalidity* standard of review for First Amendment, content-based statutes."[9] In this case the First Court of Appeals has repeated the mistake that it made in *Lo*: it

---

[9] *Ex Parte Lo*, 424 S.W.3d at 16.

has mistakenly presumed Section 33.021's content-based restriction on speech to be valid,[10] and put the burden on Mr. Wheeler to rebut that presumption.[11]

In making this mistake, the First Court read too much into[12] this Court's dicta in *Lo* implying that Section 33.021(c) of the Texas Penal Code is not a content-based restriction on speech.[13]

❧

## The Text of the Statute

The relevant portions of Texas Penal Code Section 33.021 state:

> Sec. 33.021. ONLINE SOLICITATION OF A MINOR. (a) In this section:
>
> (1) "Minor" means:
>
> (A) an individual who represents himself or herself to be younger than 17 years of age; or
>
> (B) an individual whom the actor believes to be younger than 17 years of age.
>
> (2) "Sexual contact," "sexual intercourse," and "deviate sexual intercourse" have the meanings assigned by Section 21.01.
>
> …
>
> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.
>
> (d) It is not a defense to prosecution under Subsection (c) that:
>
> (1) the meeting did not occur;

---

[10] Opinion below at 6.

[11] Opinion below at 7.

[12] *See* Opinion below at 6 ("*Ex parte Lo* leads us to this conclusion"); *id.* at 7 ("Following *Lo*, we conclude that Section 33.021(c) regulates conduct and unprotected speech").

[13] *Lo* at 16–17.

6

(2) the actor did not intend for the meeting to occur; or

(3) the actor was engaged in a fantasy at the time of commission of the offense.[14]

Mr. Wheeler's complaint below was that "what remains of Section 33.021 is unconstitutionally overbroad in violation of the First Amendment."[15] The First Court of Appeals addressed subsections 33.021(d)(2) and (d)(3) separately and ignored subsection (a)(1)(A). It is the interplay of subsections 33.021(a)(1)(A), (d)(2), and (d)(3) with (c), however, that renders the whole of the statute unconstitutional.

While the State may constitutionally forbid speech that is intended to lead to sex with children, in Section 33.021 it also forbids speech that it may not constitutionally forbid: speech that is intended to lead to sex with adults (subsection (a)(1)(A)); and speech that is not intended to result in sex with either children or adults (subsections (d)(2)–(3)).

While the statute is captioned "Online Solicitation of a Minor" (which would be a category of constitutionally unprotected speech) the forbidden conduct includes a real and substantial amount of speech that is not the solicitation of a minor, and so is protected.

꙳

---

[14] Tex. Penal Code § 33.021 (West 2014). This Court held in *Ex Parte Lo*, 434 S.W.3d 10 (2013) that Section 33.021(b) of the Texas Penal Code is unconstitutional, and the definitions of Section 33.021(a)(3) applied only to 33.021(b), so this is what remains of the statute.

[15] Appellant's brief below at 3.

*Section 33.021 is a content-based restriction on speech.*

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech."[16] Under the Free Speech Clause a government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."[17] Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *R. A. V. v. St. Paul*, 505 U. S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd.*, 502 U. S. 105, 115, 118 (1991).

Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed.[18] An otherwise content-neutral restriction may be rendered content-based if it discriminates because of the intent of the speech.[19]

---

[16] U. S. Const. amend. 1.

[17] *Police Dept. of Chicago v. Mosley*, 408 U. S. 92, 95 (1972).

[18] *Reed v. Town of Gilbert*, 576 U.S. ___, 135 S.Ct. 2218, 2227, (2015).

[19] *See Ex Parte Thompson*, 442 S.W.3d 325, 347 (Tex. Crim. App. 2014) (holding that a portion of section 21.15 of the Texas Penal Code was content-based because it discriminated on the basis of the underlying sexual thought).

8

"If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based."[20]

It is necessary to look at the content of the speech in question to decide if someone charged under Section 33.021 violated the law. Section 33.021 applies to particular speech because of the topic discussed (meeting for sex), because of the idea or message expressed (that the speaker would like to meet the recipient of the message for sex), and perhaps because of the intent of the speech.[21]

❧

## Because Section 33.021 is a content-based restriction on speech, it is presumptively invalid.

> When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. The burden normally rests upon the person challenging the statute to establish its unconstitutionality. However, when the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed. Content-based regulations (those laws that distinguish favored from disfavored speech based on the ideas expressed) are presumptively invalid, and the government bears the burden to rebut that presumption.[22]

❧

---

[20] *Ex Parte Lo*, 424 S.W.3d at 15 fn. 12.

[21] Whether the intent of the speech matters under Section 33.021 is an interesting question, as discussed below in the context of vagueness.

[22] *Ex Parte Lo*, 424 S.W.3d 10, 14–15 (Tex. Crim. App. 2013).

9

As its rationale for applying the wrong presumption (validity rather than invalidity) the First Court in this case "conclude[d] that Section 33.021(c) regulates conduct and unprotected speech."[23] It was wrong about conduct, and it put the cart before the horse on protected speech.

❧

Does Section 33.021 regulate conduct?

In *Ex Parte Lo*, this Court cited *R.A.V. v. City of St. Paul* for the proposition that "content-based regulations of speech are presumptively invalid."[24] The paragraph in *R.A.V.* from which the court drew this proposition begins:

> The First Amendment generally prevents government from proscribing speech, **or even expressive conduct**, because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid.[25]

There is no distinction between content-based restrictions of speech, and content-based restrictions of expressive conduct.

In *Ex Parte Thompson* this court reiterated: "The free speech protections of the First Amendment are implicated when the government seeks to regulate protected speech *or expressive conduct*."[26]

---

[23] Opinion below at 7.

[24] *Lo* at 14 fn 6 (citing to *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)).

[25] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (citations omitted, emphasis added).

[26] *Ex parte Thompson*, 414 S.W.3d 872, 876 (Tex. App.—San Antonio 2013), *aff'd*, 442 S.W.3d 325 (Tex. Crim. App. 2014) (emphasis added).

In the First Amendment context, in fact, "speech" includes expressive conduct, sometimes called "symbolic speech."[27] The speech in this case, however, is not expressive conduct but pure speech — words spoken or typed into a computer.

This Court misled the First Court with an offhand remark in dicta in *Ex Parte Lo* about Section 33.021(c) forbidding conduct: "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense."[28] The First Court made much of these dicta in its opinion.[29] But in *Lo* this Court also wrote:

> According to the First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." The State may not justify restrictions on constitutionally *protected* speech on the basis that such restrictions are necessary to effectively suppress constitutionally *unprotected* speech, such as obscenity, child pornography, or the solicitation of minors.[30]

---

[27] *See, e.g., Spence v. Washington,* 418 U.S. 405 (1974) (affixing peace symbol to flag), *Tinker v. Des Moines Community School District,* 393 U.S. 503 (1969) (wearing black arm bands), *West Virginia State Board of Education v. Barnette,* 319 U.S. 624 (1943) (not saluting the flag); *Ex Parte Thompson*, 442 S.W.2d 325 (Tex. Crim. App. 2014) (taking photographs).

[28] *Ex parte Lo,* 424 S.W.3d at 17, *reh'g denied* (Mar. 19, 2014). This rationale does not apply to the fantasy speech expressly criminalized by Section 33.021(c) and (d).

[29] See Opinion Below at 6–7.

[30] *Ex parte Lo,* 424 S.W.3d at 18.

So this Court in *Lo* correctly gave "the solicitation of minors" as an example of "speech" — unprotected speech, but speech nonetheless.[31] Even aside from *Lo*, there are many cases describing solicitation as speech.[32]

The First Court's error in this case (and its error in *Maloney* and *Lo*, and the Beaumont Court's error in *Victorick*) was not in treating "speech" as "conduct," but in treating a content-based restriction on expressive conduct ("speech" in the First Amendment context) as something else.

The opposite of a content-based restriction on speech is not a conduct-based regulation. It is, rather, a "time, place, or manner" restriction. A time,

---

[31] This internal contradiction in *Lo* — calling solicitation at once "conduct" and "speech" — illustrates why dicta are not binding.

[32] *See, e.g., United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("**Speech** attempting to arrange the sexual abuse of children is no more constitutionally protected than **speech** attempting to arrange any other type of crime") (emphasis added); *Karwoski v. State*, 867 So. 2d 486, 488 (Fla. Dist. Ct. App. 2004) ("In this case, it is … **speech** that amounts to seduction, solicitation and enticement of a child to commit a crime that is prohibited) (emphasis added); *LaRose v. State*, 820 N.E.2d 727, 730 (Ind. Ct. App. 2005) ("Indiana Code section 35–42–4–6 criminalizes **speech** sexually soliciting an individual under the belief that the individual solicited is a minor, which is a content-based regulation subject to strict scrutiny") (emphasis added); *Arganbright v. State*, 328 P.3d 1212, 1217 (Okla. Crim. App. 2014) ("This statutory provision causes it to be unlawful for any person to communicate with a minor through the use of electronic technology for the purposes of facilitating, encouraging, offering, or soliciting sexual conduct or communicating sexual or prurient interest with any minor, or other individual the person believes to be a minor. Therefore, we find that the statute regulates **speech** based upon its content or subject matter") (emphasis added); *State v. Rung*, 774 N.W.2d 621, 630 (Neb. 2009) ("Various state courts considering statutes similar to § 28–320.02 have also rejected First Amendment challenges on the basis that **speech** to entice a minor to engage in illegal sexual activity is not speech protected by the First Amendment") (emphasis added). There are certainly many more such cases.

12

place, or manner restriction is subject only to intermediate scrutiny.[33] Section 33.021 is not a "time, place, or manner" restriction on speech because it is not content-neutral. It is not content-neutral because the factfinder must consider the content of the speech to determine whether it violates the law.

❧

## Unprotected speech?

Whether a content-based restriction on speech such as Section 33.021 is presumed to be invalid does not depend on whether the statute restricts *protected* speech, but on whether it restricts speech based on its content. If, as here, a statute restricts speech based on its content, it is presumed to be invalid. The state might rebut the presumption of unconstitutionality by showing that all of the speech forbidden by a statute was unprotected. It cannot in this case, but in theory it might.

For example, if Section 33.021(a)(1) did not define "minor" to include a person whom the defendant knows to be an adult, and if Section 33.021(d) did not exclude the defenses of fantasy and lack of intent then Section 33.021(c)[34] it would probably forbid only true solicitation, and the State could argue that that itself was a rebuttal of the presumption of invalidity. But sex between consenting adults, even those who pretend ("represent themselves") to be

---

[33] *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989).

[34] Indeed, the Texas Legislature has rewritten Section 33.021 to do just this.

children is not a crime, and solicitation without intent is not solicitation. Because true solicitation requires the specific intent that *a crime* be *imminently committed*, Section 33.021(c) regulates speech other than true solicitation.

Whether the restricted speech falls entirely into a category of unprotected speech is the second step in the analysis, and the burden is on the State to show that it does. Here, the statute restricts some protected speech—fantasy and ageplay—as well as some unprotected speech—actual solicitation—so the First Court should have found its way to the third step in the analysis: strict scrutiny, with the burden on the State.

❧

## Conclusion

Because Section 33.021 is a content-based restriction on speech, it is presumptively invalid and the State has the burden of rebutting that presumption by showing that the statute satisfies strict scrutiny.

The First Court's application of the incorrect standard—presuming that the statute is valid—alone would be reason enough for this Court to grant review under Texas Rule of Appellate Procedure 66.3(c) even if the First Court had accidentally arrived at the right substantive conclusion by applying the wrong standard. It is axiomatic that it is more important that a court apply the rules correctly than that it arrive at any particular result.

❧

Having found that the statute is a content-based restriction on speech and is presumed unconstitutional, this Court must next determine whether the speech forbidden by the statute is wholly unprotected. If the statute forbids only unprotected speech then it is a valid restriction on speech. If the statute forbids protected speech as well as unprotected speech then the Court must apply strict scrutiny. The burden is on the State to support a presumptively unconstitutional content-based restriction on speech.

The State has failed to meet that burden.

❧

*Other presumptions are also reversed.*

In *Maloney v. State* the First Court of Appeals listed several "principles governing constitutionality review:"

> When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity. The party challenging the statute carries the burden to establish its unconstitutionality. We must uphold the statute if we can determine a reasonable construction that will render it constitutional.[35]

---

[35] *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App. — Houston [1st Dist. 2009, pet. ref'd.) (cites omitted).

The presumption of Section 33.021's *in*validity, which follows from the recognition that the statute is a content-based restriction on speech, has interesting and important consequences, which are the converse of *Maloney*'s "principles":

- The presumption of invalidity creates a *presumption that the legislature has acted unreasonably or arbitrarily* in passing Section 33.021 (because if the legislature passed an unconstitutional statute, it acted unreasonably or arbitrarily);
- Because of the presumption of invalidity, *if Section 33.021 can be construed in two different ways, one of which renders it invalid, the court must apply the interpretation that renders it invalid*: In *Duncantell v. State* the Fourteenth Court wrote, "We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the legislature did not act arbitrarily and unreasonably in enacting the statute. *Therefore*, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity."[36] Just as the presumption of *validity* leads to the principle that the statute must be interpreted to sustain its *validity* if possible, so does the presumption of *invalidity* leads to the principle that the statute must be interpreted to sustain its *invalidity* if possible;
- Because the statute is presumed to be invalid, *the State carries the burden* to establish Section 33.021's constitutionality;[37] and
- Because the statute is presumed to be invalid, *this Court must reject Section 33.021 if it can determine a reasonable construction that will render*

---

[36] *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (emphasis added, cites omitted).

[37] *Ex parte Lo*, 424 S.W.3d at 15; *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004).

16

*it unconstitutional*: In *Ely v. State* the Court of Criminal Appeals held that "this [non-content-based] statute is vested with a presumption of validity and this Court is duty bound to construe such statutes in such a way as to uphold their constitutionality."[38] Just as courts are bound to construe presumptively *valid* statutes in such a way as to uphold their constitutionality, they are bound to construe presumptively *invalid* statutes in such a way as to overturn them.

We presume that a statute that *might* be unconstitutionally applied *will* be because we do not trust the State not to apply such a statute unconstitutionally. To trust criminal prosecutors to resist applying a statute unconstitutionally would be to abdicate courts' responsibility to defend the First Amendment.[39]

❧

### Does Section 33.021 forbid only unprotected speech?

The second step in the contemporary analysis of a penal statute restricting speech is to ask whether the statute forbids only unprotected speech. If a statute forbids only unprotected speech—that is, speech that falls into a recognized category of historically unprotected speech—then the court need not apply strict scrutiny.

---

[38] *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979).

[39] *See U.S. v. Stevens*, 559 U.S. 460, 480 (2010) ("[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

There are a few narrowly defined categories of historically unprotected speech.

> Among these categories are advocacy intended, and likely, to incite imminent lawless action; obscenity; defamation; speech integral to criminal conduct; so-called "fighting words"; child pornography; fraud; true threats; and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain.[40]

All speech that does not fall into one of those categories is protected by the First Amendment.

The only recognized category of historically unprotected speech into which the speech restricted by Section 33.021 even arguably falls is the first: *speech intended and likely to incite imminent lawless action*—in a word, "incitement."[41]

When it is read in isolation, Section 33.021(c) appears to forbid only incitement — a communication with the intent that a real-world (that is, non-speech) crime be committed:

> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor

---

[40] *Alvarez*, 132 S. Ct. at 2544 (citations omitted).

[41] Some speech forbidden by Section 33.021 might *incidentally* be obscene, or integral to criminal conduct, or present some grave and imminent threat the government has the power to prevent. But as defined by Section 33.021, the speech forbidden is none of these things.

will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.[42]

But including Sections 33.021(a)(1)(A), 33.021(d)(2), and 33.021(d)(3) in our reading of the statute gives the lie to this perception. There are four scenarios forbidden by Section 33.021; only one is incitement.

Either the defendant believes the complaining witness to be a child,[43] or the defendant does not believe the complaining witness to be a child.[44]

Either the defendant intends to have sex with the complaining witness or the defendant does not intend to have sex with the complaining witness (33.021(d)(2), (3)).

These two independent either-or conditions generate a matrix of four scenarios:

---

[42] Tex. Penal Code §33.021(c).

[43] Tex. Penal Code § 33.021(a)(1)(B).

[44] Tex. Penal Code § 33.021(a)(1)(A). Whether the complainant is a child is not relevant under the statute.

|  | D believes that CW is a child. | D doesn't believe that CW is a child. |
| --- | --- | --- |
| D intends to have sex with CW | Speech is unprotected. | Speech is protected.[45] |
| D does not intend to have sex with CW. | Speech is protected. | Speech is protected. |

In three of these four scenarios, the defendant's speech is constitutionally protected.

Soliciting a child to meet for sex may be "directed to inciting or producing imminent lawless action and is likely to incite or produce such action," and so be unprotected under the *Brandenburg* test for unprotected incitement.[46]

"Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech (commercial or not) that is intended to induce or commence illegal activities."[47] Various anti-child-solicitation statutes have been upheld. But as this Court noted in *Lo*,

---

[45] The situation in which the CW is a child but D does not believe it might be an edge case, but the speech would be protected in that case as well because the accused would have no intent that a crime be committed.

[46] *See Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) ("the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy … of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action").

[47] *United States v. Williams*, 553 U.S. 285, 298 (2008). Following *Williams*'s language, we might consider "solicitation" a tenth category of unprotected speech, separate from

statutes aimed at preventing the dissemination of harmful materials to minors and solicitation of minors over the internet … share either of two characteristics: (1) the definition of the banned communication usually tracks the definition of obscenity…; or (2) the statutes include a specific intent to commit an illegal sexual act, i.e., the actor intends to "solicit" or "lure" a minor to commit a sexual act.[48]

Because Section 33.021 punishes people who do not intend to commit illegal sexual acts by forbidding constitutionally protected speech (ageplay or fantasy) as well as constitutionally unprotected speech (incitement or solicitation) this Court must determine whether it meets strict scrutiny, that is, whether it is necessary and narrowly drawn to satisfy a compelling state interest.[49]

❧

## Section 33.021 will fail strict scrutiny.

"To satisfy strict scrutiny, a law that regulates speech must be (1) necessary to serve a (2) compelling state interest and (3) narrowly drawn."[50] "In this context, a regulation is 'narrowly drawn' if it uses the least restrictive means of achieving the government interest."[51]

---

"incitement." That category would still require the intent that *a crime* be committed, so the analysis would remain the same. Neither fantasy nor ageplay implies an intent that a crime be committed.

[48] *Ex Parte Lo*, 424 S.W.3d at 21.

[49] Spoiler: it is not.

[50] *Ex parte Lo*, 424 S.W.3d at 15.

[51] *Ex parte Thompson*, 442 S.W.3d 325, 344 (Tex. Crim. App. 2014).

Because the statute is presumed to be unconstitutional, the burden is on the State to prove its constitutionality. The State has failed to do so. Section 33.021 serves a compelling state interest, but it is neither necessary nor the least restrictive means to further that interest.

❧

## There exists a compelling state interest.

The State has a compelling interest in preventing child abuse.

❧

## Section 33.021 is not necessary.

The unprotected speech that Section 33.021 forbids—the actual solicitation of a child to have sex—is also forbidden by Section 15.031 of the Texas Penal Code:

> Sec. 15.031.  CRIMINAL SOLICITATION OF A MINOR.
>
> (b)  A person commits an offense if, with intent that an offense under Section 20A.02(a)(7) or (8), 21.02, 21.11, 22.011, 22.021, 43.02, 43.05(a)(2), or 43.25 be committed, the person by any means requests, commands, or attempts to induce a minor or another whom the person believes to be a minor to engage in specific conduct that, under the circumstances surrounding the actor's conduct as the actor believes them to be, would constitute an offense under one of those sections or would make the minor or other believed by the person to be a minor a party to the commission of an offense under one of those sections.

An attempt to have sex with a child is also forbidden by section 15.01 of the Texas Penal Code.

Because everything forbidden by the remainder of Section 33.021 is either forbidden by Section 15.031 (actual solicitation) and Section 15.01

22

(attempt) or constitutionally protected (fantasy, ageplay),[52] Section 33.021 is not necessary to achieve the compelling state interest of preventing child abuse.

❧

Section 33.021 is not narrowly drawn.

To satisfy strict scrutiny, a statute must be the least restrictive means to further the compelling state interest. The Texas Legislature has passed, and the Governor has endorsed, a narrowing amendment to Section 33.021, which limits "minor" to someone who is, or whom the defendant believes to be, a child; and which restores the inferential-rebuttal lack-of-intent defenses eliminated by subsection (d). Effective September 1, 2015, the amended Section 33.021 demonstrates that the version of Section 33.021(c) at issue in this case is not narrowly drawn to accomplish that compelling interest. Section 33.021 is not the least restrictive means to further the State's interest in preventing actual sexual abuse of children.

In a statement of intent, Judge Joan Huffman, the sponsor of the bill, noted, "The current statute is overbroad. Though the statute was enacted to impose sanctions upon those who engage in Internet conversations with

---

[52] *See Ex Parte Lo,* 424 S.W.3d at 20 ("In sum, *everything* that Section 33.021(b) prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to minors, solicitation of a minor, or child pornography) or is constitutionally protected.")

23

minors with an intent for physical contact to take place, the statute's sexually explicit communication provision contains no requirement that an actor ever possess the intent to meet the child."[53]

Under the 2015 statute as amended in 2015, "minor" means either a child under 17 years of age or someone whom the defendant believes is under 17 years of age, so age-play is protected; and "lack of intent" and "fantasy" are restored as inferential-rebuttal defenses, so fantasy talk is protected.[54] In other words, the Texas Legislature has corrected the very problems that make the current Section 33.021 unconstitutional — problems that Judge Huffman recognized, even though the courts have not yet recognized them.

The new Section 33.021 demonstrates that the broader statute at issue in this case is not the least restrictive means to further the State's interest in preventing the actual sexual abuse of children.

❧

The unconstitutionally forbidden speech is substantial.

Because the statute is presumed to be unconstitutional, the burden was on the State to prove its constitutionality. For the State to overcome the presumption that the statute is unconstitutional it would have had to demonstrate that the

---

[53] http://www.legis.state.tx.us/tlodocs/84R/analysis/html/SB00344I.htm

[54] *See* Tex. Penal Code § 33.021 (2015), effective September 1, 2015.

overbreadth of the statute was not real and substantial. What does it mean that a statute is not substantially overbroad? In *Maloney* the First Court wrote:

> Considering the overly broad scope and purpose of Section 33.021, we have been given no basis to believe that prosecutions of consenting adults engaging in role-playing would amount to any more than a "tiny fraction" of all prosecutions under the statute.[55]

But the problem with a statute that is overbroad under the First Amendment is that it has a chilling effect on protected speech, and that chilling effect is not mitigated by the State's good intentions. So the question cannot be (as the *Maloney* court implies) whether the State *would* prosecute consenting adults engaging in role play (it is easy for any prosecutor to promise not to, but that promise is binding on nobody else), but whether the State *could* prosecute such adults.

While Mr. Wheeler has no burden beyond showing that the statute is a content-based restriction on speech, he has presented uncontested evidence that it is substantial.[56] A search for <age play erotica> books on Amazon.com turns up more than 3,000 results.[57]

Although the number of people interested in ageplay may not be huge in absolute numbers, neither is the number of people willing to solicit sex with

---

[55] *Maloney v. State*, 294 S.W.3d 613, 628 (Tex. App.—Houston [1st Dist] 2009, pet. ref'd).

[56] *Please see* CR 16–29, *The Prevalence and Scope of Ageplay*.

[57] http://www.amazon.com/s/?url=search-alias%3Dstripbooks&field-keywords=age+play+erotica.

actual children. For every person willing to engage in extreme human behavior (here, sexual assault of children) there will always be many more people interested in a tamer version (here, ageplay).

Substantial overbreadth is not to be measured in absolute terms, but "in relation to the statute's plainly legitimate sweep."[58] "Real and substantial in relation to" does not mean "more than." "One" is substantial in relation to "ten," but probably not in relation to "one million."

The State has not even tried to carry its burden of showing that age-play or fantasy is not a real and substantial category of speech, much less succeeded.

Here is the First Court's overbreadth analysis:

> [W]e conclude that the legitimate reach of Penal Code Section 33.021(c) dwarfs the threat of its arguably impermissible application to innocent ageplayers.

This "conclusion" is nothing more than a guess. While there is evidence in the record of the prevalence of ageplay,[59] there is no evidence of the prevalence of actual solicitation of children—the legitimate reach of the statute. Compared to the number of people interested in ageplay, how many arrange meetings with children for sex?

---

[58] *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

[59] On fetish site fetlife.com alone, more than 94,000 people admit an interest in ageplay. *See The Prevalence and Scope of Ageplay* 11.

To show that the overbreadth was not real and substantial, the State may not merely argue that most people aren't ageplayers, nor promise that ageplayers and fantasizers would not be prosecuted. It would have had to show that the number of people who use the Internet for age-play or fantasy speech is not real and substantial in comparison to the number of people who use the Internet to arrange sex with children.

"Real and substantial" lies somewhere between "one can conceive of some impermissible applications"[60] and "unconstitutional in all applications." "In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."[61] "However, where the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack."[62]

To rebut the presumption of Section 33.021's unconstitutionality the State must show that the protected speech is not substantial compared to the legitimate reach of the statute. The State cannot do so.

---

[60] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984).

[61] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. at 801.

[62] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. at 800 n. 19.

This is not a situation in which the statute forbids unprotected speech and remains silent about the protected speech. Section 33.021 expressly forbids fantasy speech by eliminating the defense of fantasy. If soliciting speech with people who represent themselves (but are not believed) to be children were not substantial in relation to soliciting speech with actual children, the Texas Legislature would not have addressed such speech with Section 33.021(a)(1). If fantasy speech and speech with no intent to meet were not substantial, the Texas Legislature would not have addressed them in Section 33.021(d). It is no counterargument to say that the Texas Legislature intended only to eliminate defendants' *false* claims that they knew their correspondents to be adults, or that they did not intend to meet their correspondents: in all other cases we trust juries to determine what defendants believed and intended, and we do not eliminate valid and constitutionally required defenses in the interest of preventing the abuse of those defenses.

For the State to overcome the presumption that the statute is unconstitutional it would have to have demonstrated that the overbreadth of the statute was not real and substantial. It would have to have shown that the number of people who use the Internet for age-play or fantasy speech[63] is not

---

[63] The First Court has said elsewhere that "subSection 33.021(d) provides that an accused cannot defend against an online solicitation of a minor charge by asserting that he was engaged in a fantasy at the time of commission of the offense." *Maloney*, 294 S.W.3d at 626.

28

real and substantial in comparison to the number of people who use the Internet to arrange sex with children. The State has failed to do so.

᠊᠊᠊᠊᠊ ❧ ᠊᠊᠊᠊᠊

## Conclusion

Because Section 33.021 forbids a substantial amount of protected speech, such that it is neither necessary nor narrowly written to satisfy a compelling state purpose, it is void.

## Third Ground of Review: The First Court of Appeals erred when it held that Section 33.021 of the Texas Penal Code, the Online Solicitation of a Minor statute, is not void for vagueness.

Where, as here, First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression.[64]

A statute is vague if it interferes with free speech rights by causing citizens to "steer far wider of the unlawful zone," than they otherwise would "if the boundaries of the forbidden areas were clearly marked."[65]

Section 33.021 is vague because it is contradictory. In subsection (c) it requires that an accused have "the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse," but in subsection (d)(2) it eliminates the inferential-rebuttal defense that "the actor did not

---

[64] *Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996).

[65] *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

intend for the meeting to occur." It is not possible for the accused both to have the intent that the minor will engage in sexual contact and not to intend for the meeting to occur.

"The unlawful zone" is the constitutionally unprotected speech of arranging a meeting with the intent that a crime be committeed. Speech with no intent that a meeting occur would be constitutionally protected. But Section 33.021 at best leaves us in doubt whether this constitutionally protected speech is forbidden by the statute.

The First Court resolved this conundrum by interpreting subsection (d)(2) to "refer[] only to the solicitor's intent post-solicitation"—that is, to exclude a change-of-heart defense. The legal principle underlying the First Court's resolution is that "if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity."[66]

That legal principle—that a court must apply the interpretation that sustains a statute's validity—is founded in the presumption of validity.[67]

---

[66] Opinion below at 12–13.

[67] *See Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) ("We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the legislature did not act arbitrarily and unreasonably in enacting the statute. **Therefore**, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity.") (emphasis added).

30

Because that presumption does not apply to a content-based restriction on speech, the rule does not apply to such a statute.

Indeed, because a content-based restriction on speech is presumed to be invalid, if it can be construed in two different ways, one of which sustains its validity, the court must apply the other. The First Court of Appeals erred by construing subsection (d)(2) not to eliminate subsection (c)'s specific-intent element.

Properly interpreted, Section 33.021 forbids "solicitation" that is not intended to result in a meeting. People of common intelligence must necessarily guess at the meaning of Section 33.021 and differ as to its application. So even if Section 33.021 were not overbroad—if it did not punish a substantial amount of constitutionally protected fantasy or ageplay—it would be void for vagueness.

## Conclusion

Because Section 33.021(d)(2) eliminates Section 33.021(c)'s specific-intent element, Section 33.021 is it not sufficiently definite to avoid chilling protected expression, and so is void for vagueness.

## Prayer

Because the First Court of Appeals applied the wrong standard and reached the wrong result, please grant discretionary review, order briefing, hear argument, and reverse with an order that the indictment be dismissed.

Thank you,
BENNETT & BENNETT
By:

_____
Mark W. Bennett
917 Franklin Street, Fourth Floor
Houston, Texas 77007
713.224.1747
832.201.7770 fax
Attorneys for Mr. Wheeler

## Certificate of Service

A copy of this Brief for Appellant has been served upon the State of Texas by electronic filing and by email to Lisa McMinn at lisa.mcminn@spa.texas.gov, to Brandy Robinson at brandy.robinson@austincounty.com, and to the Attorney General at const_claims@texasattorneygeneral.gov.

## Word Count

This petition uses Matthew Butterick's Equity and Concourse typefaces in 14-point. Margins are 1.5 inches, on principles suggested by Butterick's *Typography for Lawyers*.

According to Microsoft Word's word count, this petition contains 6,858 words, not including the: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

Opinion of the First Court of Appeals



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-14-00868-CR

———————————

### EX PARTE STUART OLAND WHEELER

---

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Cause No. 2014V-0074**

---

### O P I N I O N

Stuart Oland Wheeler was indicted on the felony charge of online solicitation of a minor under Texas Penal Code section 33.021(c). *See* Tex. Pen. Code Ann. § 33.021(c) (West 2014). Wheeler filed a pretrial application for a writ of habeas corpus in which he asserted that subsections 33.021(c) and (d) are facially unconstitutional. Noting that the Court of Criminal Appeals invalidated

subsection (b) of the same statute as an overbroad content-based restriction on protected speech, *see Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), Wheeler argued that the surviving subsections (c) and (d) are likewise unconstitutional. In particular, Wheeler contends that subsections (c) and (d), in combination, (1) violate the First Amendment of the United States Constitution because they are overbroad content-based restrictions that criminalize protected speech between consenting adults, (2) are contradictory and unconstitutionally vague, and (3) violate the Dormant Commerce Clause because they unduly restrict interstate internet communication. Wheeler appeals the trial court's denial of the application. We affirm.

### Penal Code Section 33.021

Wheeler was indicted under Penal Code section 33.021(c), which states:

> (c) A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Pen. Code Ann. § 33.021(c) (West 2014). Section 33.02(a)(1) defines "minor" as:

> (A)      an individual who represents himself or herself to be younger than 17 years of age; or

> (B)      an individual whom the actor believes to be younger than 17

2

years of age.

*Id.* § 33.021(a)(1).   And subsection (d) provides that it is not a defense to

prosecution under subsection (c) that:

    (1)    the meeting did not occur;

    (2)    the actor did not intend for the meeting to occur; or

    (3)    the actor was engaged in a fantasy at the time of commission of
            the offense.

*Id.* § 33.021(d).

## The Parties' Arguments

Wheeler contends that these provisions are facially unconstitutional in three

respects. First, he asserts that they are overbroad because they impermissibly

restrict protected speech between persons engaged in "ageplay," which Wheeler

asserts is a prevalent practice in which consenting adults roleplay as children for

their sexual gratification.  According to Wheeler, the statute is overbroad because

it permits the conviction of an ageplayer who speaks solicitant words to "the object

of his sexual attention, who 'represents himself' to be a child"—and thus meets the

statute's definition of "minor"—but is not in fact a child.  Wheeler also contends

that the statute is overbroad because subsection (d) both (1) eliminates the specific

intent requirement of (c) and (2) precludes an ageplayer from defending himself on

the basis that the solicitation was a mere fantasy.

Second, Wheeler argues that the statute is unconstitutionally vague because subsection (c) purports to require proof of specific intent—that the defendant intended to meet and have sexual contact with the minor at the time of the solicitation—only to have subsection (d) "eliminate[] the intent element" of (c). Wheeler asserts that this contradiction prevents persons of ordinary intelligence from understanding the prohibited conduct.

Finally, Wheeler asserts that the statute violates the Dormant Commerce Clause because it unduly burdens interstate commerce by "attempting to place regulations on [i]nternet users everywhere."

Based on his premise that the statute is a content-based restriction on protected speech, Wheeler asserts that we must presume the statute invalid and that the State has the burden to demonstrate its validity under the categorical approach employed by the United States Supreme Court in *Alvarez* and *Stevens*. *See United States v. Alvarez*, 132 S. Ct. 2537 (2012); *United States v. Stevens*, 559 U.S. 460 (2010). Alternatively, he argues that, at a minimum, we must subject the statute to strict scrutiny.

The State contends that Penal Code section 33.021(c) restricts conduct and not merely speech. Therefore, argues the State, we must presume that the statute is valid and subject it only to rational basis review. The State contends that the statute bears a rational relationship to the legitimate state interest in protecting

4

minors from sexual predators and thus passes constitutional muster. Alternatively, the State argues that if the combination of (c) and (d) is unconstitutional, we should uphold subsection (c), under which Wheeler was indicted, and strike the offending portions of subsection (d).

## Standard of Review

Whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d at 14. When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily in enacting it. *Id*. at 14–15. The party challenging the statute normally carries the burden to establish the statute's unconstitutionality. *Id*. at 15.

A different standard of review applies, however, if the challenged statute seeks to restrict speech based on its content. *Ex parte Lo*, 424 S.W.3d at 15. In that case, the usual presumption of constitutionality is reversed, the statute is presumed invalid, and the State bears the burden to rebut the presumption. *Id*. This is because statutes that suppress, disadvantage, or impose differential burdens upon speech because of its content are subject to the most exacting scrutiny. *Id*. (quoting *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S. Ct. 2445 (1994)). A law that regulates speech thus survives only if it is narrowly drawn and necessary to serve a compelling state interest. *Ex parte Lo*, 424 S.W.3d at 15.

5

Wheeler argues that the Court of Criminal Appeals incorrectly applied strict scrutiny in *Ex parte* Lo, and he urges us to apply the "categorical approach." We conclude that we are bound to apply the usual standard in which we presume the statute's validity and Wheeler bears the burden to demonstrate its invalidity.

*Ex parte Lo* leads us to this conclusion. Lo was charged under section 33.021(b), which prohibited a person from communicating online in a sexually explicit manner with a minor if the person had the intent to arouse and gratify anyone's sexual desire. *Ex parte Lo*, 424 S.W.3d at 17. The Court of Criminal Appeals concluded that section 33.021(b) was unconstitutionally overbroad because it restricted and punished speech based on content but was not narrowly drawn. *Id*. at 24 (noting that subsection (b) would bar electronic communication relating to "many modern movies, television shows, and 'young adult' books, as well as outright obscenity, material harmful to a minor, and child pornography").

In reaching that conclusion, the Court of Criminal Appeals noted that subsection (c), under which Wheeler was charged, "provides an excellent contrast" to subsection (b). *Id.* at 17. The Court described subsection (c) as a solicitation statute, the likes of which have been routinely upheld, because offers to engage in illegal transactions such as sexual assault of minors are categorically excluded from First Amendment protection. *Id*. at 16–17. It expressly noted that the gravamen of the offense of solicitation is "the *conduct* of requesting a minor to

engage in illegal sexual acts." *Id*. at 17 (emphasis in original). It contrasted subsection (b) as "very different" because it "prohibits and punishes speech based on its content." *Id.* Following *Lo*, we conclude that section 33.021(c) regulates conduct and unprotected speech. *Id*. (noting solicitation of minors is constitutionally unprotected speech); *see also Ex parte Victorick*, No. 09-00551-CR, 2014 WL 2152129, at \*2 (Tex. App.—Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding that section 33.021(c) punishes conduct rather than the content of speech alone), *cert. denied, Victorick v. Texas*, 135 S. Ct. 1557 (2015). We therefore must presume the statute's validity and place the burden of demonstrating unconstitutionality upon Wheeler. *Ex parte Lo*, 424 S.W.3d at 17; *Maloney v. State*, 294 S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd.) (applying presumption that statute is valid in its review of overbreadth and vagueness challenges to Penal Code section 33.021(c)); *Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2013, pet. ref'd) (presuming validity of Penal Code section 33.021(c) in considering vagueness challenge); *Ex parte Victorick*, 2014 WL 2152129, at \*2 (applying presumption of statutory validity in overbreadth and vagueness challenges to section 33.021(c)).

**Overbreadth Challenges**

According to the First Amendment overbreadth doctrine, a statute is facially

invalid if it prohibits a "substantial" amount of protected speech "judged in relation to the statute's plainly legitimate sweep." *Ex parte Lo*, 424 S.W.3d at 18 (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S. Ct. 2191 (2003)); *see also Bynum v. State*, 767 S.W.2d 769, 772 (Tex. Crim. App. 1989). Before a statute will be invalidated on its face as overbroad, the overbreadth must be real and substantial in relation to its plainly legal sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Put differently, a statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *See In re Shaw*, 204 S.W.3d 9, 15 (Tex. App.—Texarkana 2006, pet. ref'd).

### 1. Penal Code Section 33.021(c)

This Court, and the Beaumont Court of Appeals, have held that Penal Code section 33.021(c) is not unconstitutionally overbroad. *See Maloney*, 294 S.W.3d at 626–29 (rejecting overbreadth challenge to subsection 33.021(c)); *Ex parte Victorick*, 2014 WL 2152129, at *2 (same). Nevertheless, Wheeler urges us to revisit this precedent in light of his argument that the statute prohibits an adult ageplayer from soliciting a consenting fellow ageplayer who is pretending to be a child as part of a fantasy. In support of his argument, Wheeler relies on an article by Paul J. Dohearty demonstrating the purported prevalence of ageplay.

But longstanding precedent teaches that a statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional

8

application.  *In re Shaw*, 204 S.W.3d at 15 (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S. Ct. 2118 (1984)); *Ex parte Victorick*, 2014 WL 2152129, at \*2.  Indeed, the United States Supreme Court has explained,

> Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is "strong medicine" and have employed it with hesitation, and then "only as a last resort."

*New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348 (1982) (citing *Broadrick*, 413 U.S. at 613).

Here, the government objective—to protect children from sexual exploitation and abuse—is one the Supreme Court of the United States regards as having surpassing importance.  *Id*. at 757.  Although the Dohearty article asserts that ageplay is increasingly prevalent in the age of social media, we conclude that the legitimate reach of Penal Code section 33.021(c) dwarfs the threat of its arguably impermissible application to innocent ageplayers and that whatever overbreadth exists should be cured by thorough and case-by-case analysis and judicious use of prosecutorial discretion.[1]  *See Maloney*, 294 S.W.3d at 627 (citing *Ferber*, 458 U.S. at 773–74).  Because the statute's arguable overbreadth is insubstantial when judged in relation to the statute's plainly legitimate sweep, we

---

[1]   We note that Wheeler himself does not assert that he was engaging in innocent ageplay when he made the online solicitation for which he was indicted.

9

hold that Penal Code section 33.021(c) is not unconstitutionally overbroad. *Id*; *see also Ex parte Victorick*, 2014 WL 2152129, at *2.

## 2. Penal Code Section 33.021(d)(2)

Wheeler contends that Penal Code section 33.021(d)(2) is overbroad because it eliminates the element of specific intent required by subsection (c). *See* TEX. PEN. CODE ANN. § 33.021(d)(2) (providing that it is not a defense to prosecution under section 33.021(c) that the actor did not intend for the solicited meeting to occur). Thus, argues Wheeler, the statute permits conviction even of one who did not, in fact, intend at the time of the solicitation to actually meet the minor whom he solicited. We disagree.

"If a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its validity." *Maloney*, 294 S.W.3d at 626. Here, we read subsection (c) to require proof of specific intent to meet at the time of the solicitation, and subsection (d)(2) to refer only to the solicitor's intent post-solicitation. In other words, we interpret subsection (d)(2) to preclude only a defense on the basis that the solicitor lost the specific intent to meet or changed his mind about meeting after the solicitation occurred. We hold that Subsection (d)(2) does not relieve the State of its burden to prove that the

defendant had the specific intent to meet at the time of the solicitation.[2] *See Ex parte Zavala*, 421 S.W.3d at 231–32 (concluding that Penal Code sections 33.021(c) and (d)(2) are not contradictory and construing (d)(2) to mean that it is irrelevant whether, post-solicitation, the defendant no longer intended for the meeting to occur, because offense is complete at the time of solicitation if the defendant has the requisite intent to meet at the time of the solicitation).

### 3. Penal Code Section 33.021(d)(3)

Wheeler argues that Penal Code section 33.021(d)(3) is unconstitutionally overbroad because it precludes a defense to prosecution under (c) based on the fact that a defendant was engaged in ageplay—i.e., was fantasizing that the consenting adult receiving the solicitation was actually a child—at the time of the solicitation.

As we discussed above, a statute should not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional application. *In re Shaw*, 204 S.W.3d at 15 (citing *Taxpayers for Vincent*, 466 U.S. at 800); *Ex parte Victorick*, 2014 WL 2152129, at *2. As we have already concluded, the statute's plainly legitimate objective is one of surpassing importance. When judged in

---

[2]     Wheeler argues that this interpretation of (d)(2) would render it superfluous and therefore meaningless, because a "change of heart" defense is not a defense in any case. We note, however, that renunciation may be an affirmative defense in some circumstances, *see* TEX. PENAL CODE ANN. § 15.04 (West 2011), and that it was the legislature's prerogative to underscore in (d)(2) the concept that the offense described in section 33.021 is complete when the culpable request or inducement is unilaterally presented. We also note that the legislature has amended section 33.021 to eliminate (d)(2) and (d)(3), effective September 1, 2015.

11

comparison to the statute's plainly legitimate sweep, we conclude that the statute's arguable overbreadth is insubstantial. Accordingly, we hold that Penal Code section 33.021(d)(3) is not unconstitutionally overbroad. *Id.*; *see also Ex parte Victorick*, 2014 WL 2152129, at \*2.

We overrule Wheeler's first issue.

### Vagueness Challenge

Under the void-for-vagueness doctrine, a statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006). Statutes are not necessarily unconstitutionally vague merely because the words or terms employed in the statute are not defined. *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). When the words used in a statute are not otherwise defined in the statute, we will give the words their plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999).

Wheeler argues that the statute is unconstitutionally vague because Section 33.021(d) "eliminates the intent element from Section 33.021(c)." Wheeler asserts that the statute is thus self-contradcitory and, therefore, people of common intelligence must necessarily guess at its meaning. As we discussed in the context of Wheeler's overbreadth challenges, if a statute can be construed in two different ways, one of which sustains its validity, we apply the interpretation that sustains its

validity. *Maloney*, 294 S.W.3d at 625. We have construed subsection (c) to require proof of specific intent to meet at the time of the solicitation, and we hold that subsection (d)(2) refers only to the solicitor's intent post-solicitation. This construction of the statute eliminates any supposed conflict between subsection (c) and subsection (d)(2). *See Ex parte Zavala*, 421 S.W.3d at 232 (concluding that Penal Code sections 33.021(c) and (d)(2) are not contradictory and rejecting vagueness challenge based on asserted contradiction). Accordingly, we hold that Penal Code section 33.021 is not unconstitutionally vague.

We overrule Wheeler's second issue.

### Commerce Clause Challenge

In his third issue, Wheeler contends that section 33.021 violates the Dormant Commerce Clause of the United States Constitution by "unduly burden[ing] interstate commerce by attempting to place regulations on the entirety of the internet." *See* U.S. CONST. art. I, § 8.

The only authority Wheeler cites in support is *American Libraries Association v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) (striking down statute criminalizing use of a computer to communicate sexually explicit materials to minors). In *Pataki*, the defendants "[did] not challenge the sections of the statute that . . . prohibit adults from luring children into sexual contact by communicating with them via the internet." *Id*. at 179. Rather, the law challenged in *Pataki* was

aimed at limiting exposure by minors to harmful content. It was that portion of the law which was ultimately found to impose a burden on interstate commerce that was disproportionate to the local benefits of regulation. Section 33.021(c), by contrast, does not punish communication of explicit materials to minors. Instead, it criminalizes online solicitation of minors with the intent to engage in sexual conduct. *Pataki* is thus inapposite.

The Supreme Court of the United States established a balancing test to determine whether a burden on interstate commerce imposed by a regulation is excessive in relation to putative local benefits. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142; 90 S. Ct. 844, 847 (1970). Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443, 80 S. Ct. 813, 816 (1960). If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities. *Pike*, 397 U.S. at 142.

Wheeler does not articulate, and we cannot discern, how section 33.021 differentiates between inter and intra state commerce. The statute is even-handed.

14

Courts have concluded—and we agree—that protecting children from sexual predators is a legitimate local public interest. *See, e.g., Ex parte Lo*, 424 S.W.3d at 21 ("There is no question that the State has a right—indeed a solemn duty—to protect young children from the harm that would be inflicted upon them by sexual predators."). And we also conclude that the effect of the statute on interstate commerce is only incidental in relation to the local benefit of the statute. Accordingly, we reject Wheeler's challenge to section 33.021 under the Dormant Commerce Clause. *Huron Portland Cement*, 362 U.S. at 443 (evenhanded local regulation to effectuate a legitimate local public interest is valid unless unduly burdensome on interstate commerce).

We overrule Wheeler's third issue.

## Conclusion

We affirm the trial court's ruling denying Wheeler's application for habeas corpus relief.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.
Publish.   TEX. R. APP. P. 47.2.

Print this page

# Envelope 7609557

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 10/29/2015 08:56:38 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Mark Bennett |
| Firm Name | Mark W Bennett |
| Filed By | Mark Bennett |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.09 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $2.99 |
| Total Provider Tax Fees | $0.25 |
| Grand Total | $3.33 |

## Payment

| | |
|---|---|
| Account Name | OnePlus Mastercard |
| Transaction Amount | $3.33 |
| Transaction Response | |
| Transaction ID | 12422992 |
| Order # | 007609557-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | 833409 |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 11/02/2015 12:09:35 | The petition for discretionary review does not contain a certification in compliance with T.R.A.P. 9.4(i)(3).; the certification contends there are 6858 words exceeding |

PM       the limit of 4500. You have ten days to tender a corrected petition for discretionary review.

## Documents

| *Lead Document* | Wheeler PDR Final.pdf | [Original] |